CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
OCT 30 2009
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ALVIN LUTHER JONES, | ) | Civil Action No. 7:08-cv-00492 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MR. GENE M. JOHNSON, et al., | ) | By: Hon. Jackson L. Kiser |
| Defendants. | ) | Senior United States District Judge |

Alvin Luther Jones, a Virginia inmate proceeding pro se, filed a civil rights complaint, pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28 U.S.C. § 1343. Jones names as defendants: Gene Johnson, Director of the Virginia Department of Corrections ("VDOC"); Harvard Stephens, Chief Medical Officer for the VDOC; G. K. Washington, the VDOC's Regional Director for the Central Region; W. J. Townley, the Superintendent of Halifax Correctional Center ("Halifax"); J. Brown, a Halifax grievance coordinator; Dr. Frank Wray, the doctor at Halifax; Sandra Vass, the head nurse at Halifax; and A. Fields, a nurse at Halifax. Jones alleges that the defendants violated his constitutional right to medical care. Jones demands $2.25 million in damages, to be re-examined, and to receive proper treatment. (Compl. (docket #1) 2.) After reviewing the record, I grant the defendants' motions for summary judgment.

I.

A. Plaintiff's Factual Allegations.

Plaintiff alleges the following facts. Plaintiff filed an emergency grievance on August 28, 2007, complaining of severe pain in his left, swollen leg and saw medical staff that morning. Defendant Nurse Vass sent plaintiff a filthy wash basin to wash himself in. Plaintiff did not receive any treatment for pain and was ignored for seven weeks.

Plaintiff filed a grievance to defendant Supt. Townley about his pain and lack of

treatment, and Townley stated that plaintiff had seen Nurse Vass and he should do his medically necessary physical exercises. Plaintiff appealed to defendant Stephens, who denied the grievance and advised plaintiff to return to Halifax's nurse call for further evaluation. Plaintiff appealed to defendant Johnson, who forwarded the grievance to defendant Washington. A staff member responded on behalf of Washington, stating that the previous response was the last level of appeal and Washington's office could not rule on the grievance. (Compl. 5-6.)

Plaintiff filed another grievance on November 15, 2007, complaining that he had to pay a co-pay to receive pain medications two months after he had surgery. (Id. 6.) Plaintiff believes the medications should be free. Vass responded to the grievance, stating that the co-pay applies regardless of when an inmate receives a medication. Plaintiff appealed to the regional health services director, who stated that a level one response is not documented on his grievance form. Plaintiff appealed to Johnson, who never responded.

Plaintiff also complains that defendant Dr. Wray prescribed him Motrin for pain management although plaintiff's medical record says he is allergic to it. (Id. 6; Mot. Am. (docket #9) 2.) Plaintiff acknowledges receiving both Motrin and Tylenol to manage his pain and receiving Zantac to counter the nauseating effects of Motrin. (Mot. Am. 2.) Plaintiff acknowledges that he did not suffer an allergic reaction to the Motrin. (Id. 4; Pl.'s Resp. Medical Def.'s Mot. Summ. J. (docket #35) 7.)

Dr. Wray sought authorization for plaintiff see an orthopaedic doctor to receive treatment for his knee injury. After receiving administrative approval, Dr. Patel, an orthopaedic specialist at the Southampton Memorial Hospital, performed orthopaedic surgery on plaintiff's knee on August 23, 2007. Dr. Patel advised plaintiff to perform physical therapy to help the injury heal,

2

but the medical staff found an orthopaedic manual for physical therapy online. (Compl. 6, 8.) The medical staff did not allow plaintiff to see a physical therapist; instead, the medical staff relied on the "non-formal" online instructions to have plaintiff conduct his own exercises. (Mot. Am. 2.) Plaintiff alleges that the non-formal exercises are "fine in association with formal therapy" and believes that they should not have been used instead of physical therapy. (Id. 2.)

Plaintiff filed a grievance on December 5, 2007, after defendant Nurse Fields took a prosthetic brace away from him. (Compl. 7; Mot. Am. 2.) Dr. Patel told plaintiff to use a knee brace for six to nine months after his knee surgery. (Compl. 7; Mot. Am. 2.) Plaintiff had the brace for one day before Nurse Fields took it away for five weeks and before he got the brace back after "writing Richmond." Nurse Fields took the brace away because plaintiff did not want to sign the co-pay form authorizing its release. Plaintiff was afraid to give Nurse Fields a "blank check" because the cost of the brace was not written on the form. Plaintiff also argues that "[a]ny argument concerning money should've been saved for later rather than to refuse his treatment." (Pl.'s Resp. Medical Def.'s Mot. Summ. J. (docket #35) 10.) As a result of not having the brace, plaintiff experienced pain, developed a limp, and feared that his leg needed more surgery. (Mot. Am. 2.)

Plaintiff filed another grievance on December 19, 2007, complaining that he still had tingling in his left thigh. (Compl. 7.) Nurse Vass told plaintiff to sign up for nurse call. (Id. 7.) After a nurse talked to plaintiff about the injury, the medical department charged him a co-pay, but plaintiff did not receive any treatment. (Id.) Nurse Vass responded to a subsequent grievance, telling plaintiff that he must pay a co-pay anytime he visits the medical department for services that were not requested by a nurse or a doctor. (Id.) Supt. Townley responded to

3

plaintiff's appeal and told plaintiff that he had already seen a nurse. (Id.)

B.     Defendants' Responses.

Medical defendants Dr. Wray, Nurse Vass, and Nurse Fields ("medical defendants") and VDOC defendants Johnson, Stephens, Washington, Townley, and Brown ("VDOC defendants") filed motions for summary judgment. In response to the defendants' motions, plaintiff reargued the claims he raised in his complaint but did not submit evidence or an affidavit. Plaintiff argues that the VDOC defendants are liable for their allegedly negligent supervision of subordinates. (Pl.'s Resp. Defs.' Mots. Summ. J. (docket #35) ¶¶ 2-3.)

1.     The VDOC Defendants.

The VDOC defendants submitted Townley's and Johnson's affidavits. Townley avers that he is the superintendent of Halifax, he is not a medical care provider, and trained health care providers make inmates' medical care decisions. (VDOC Defs.' Mot. Summ. J. (docket #29) Ex. 1 ¶ 4.) He further avers that he does not have responsibility or supervision over medical personnel at Halifax. (Id.) Townley admits that he determined plaintiff's grievances about seeking medical attention and paying medical co-pays were unfounded. (Id. ¶¶ 5-9.)

Director Johnson avers that he is not involved in the daily activities of the correctional facilities nor involved with plaintiff's medical care. (VDOC Defs.' Mot. Summ. J. Ex. 2 ¶ 4.) Johnson relies on the professional judgment of health care providers to treat inmates, and he does not substitute his judgment for the providers' judgments. (Id. ¶ 7.) Johnson states that his staff routinely forwards any inmate letters that are sent to him to the appropriate VDOC official or office. (Id. ¶ 5.)

2. The Medical Defendants.

The medical defendants submitted the affidavits of Dr. Wray, Nurse Vass, and Nurse Fields. (Medical Def.'s Br. Supp. Mot. Summ. J. (docket #26) Ex. B-D.) All three medical defendants deny being deliberately indifferent to plaintiff's medical needs.

Wray avers that he prescribed plaintiff Motrin on October 3, 2007; Nurse Vass informed him on October 5, 2007, that Motrin upset plaintiff's stomach; and Wray subsequently ordered Zantac for plaintiff to take with Motrin. (Id. Ex. C ¶ 4.) Wray states that plaintiff never complained about taking Motrin, even after Wray re-prescribed Motrin on October 24, 2007, for another three weeks. (Id.) Wray further avers that he determined in September 2007 that "plaintiff could perform necessary leg and range-of-motion exercises on his own, with instruction and assistance from the medical staff, in lieu of formal physical therapy." (Id. ¶ 5.) Wray also states he authorized plaintiff on January 17, 2008, to receive an orthopaedic follow-up after plaintiff complained the previous day about continued knee pain and thigh numbness. (Id. ¶ 6.)

Nurse Fields avers in her affidavit that she thought that the VDOC co-pay policy required inmates to pay 50% of any prosthetic device's cost as of November and December 2007. (Id. Ex. D ¶ 3.) She did not know at the time plaintiff requested his leg brace that an inmate's co-pay could not exceed $300.00. (Id. ¶ 4.) Once plaintiff refused to sign the co-pay agreement, she "was not permitted to release the knee brace to plaintiff until the required paperwork was completed, including an agreement to make the co-payment." (Id. ¶ 5.) Plaintiff refused to sign the co-pay agreement on December 5, 2007, but once she "learned that there was a limit to the co-pay, [she] corrected the form, which plaintiff signed on January 11, 2008, and delivered the brace." (Id. ¶ 7.)

5

Nurse Vass avers in her affidavit that she provided plaintiff a clean, sanitized wash basin because he was not able to use the shower and no longer wanted to bathe in a sink shared with other inmates. (Id. Ex. B ¶ 4.) She also acknowledges that the VDOC charges inmates co-pays for medications. (Id. ¶ 5.) Plaintiff told Vass on October 3, 2007, that Motrin upset his stomach, and Nurse Vass informed Dr. Wray, who prescribed Zantac to be taken with the Motrin. (Id. ¶ 7.) Plaintiff did not complain about taking Motrin once he began combining Zantac with the Motrin. (Id. ¶ 9.)

Nurse Vass also attached genuine copies of plaintiff's medical record that is kept in the ordinary and regular course of business at Halifax. (Id. Ex. A.) The medical record reflects that plaintiff arrived at Halifax in May 2006, and Dr. Wray treated plaintiff's complaints of left knee pain by injecting lidocaine and prescribing medicine. (Id. 1, 4.) When plaintiff continued complaining about his knee, Dr. Wray requested in June 2007 that plaintiff receive a CAT scan and a consultation with an orthopaedic doctor. Plaintiff received the consultation the same month, and the orthopaedic doctor performed knee surgery in August 2007. Thereafter, plaintiff was prescribed Tylenol for five days after surgery to reduce the pain in his knee. (Id. 23.) Nurse Vass explained to plaintiff several days later and again the following month about the importance of exercise to his recovery. (Id. 23, 25.) Overall, the medical record documents the medical defendants' extensive medical care of plaintiff that included numerous evaluations, treatments, and alternative prescriptions. The attached record also evidences Dr. Wray's numerous requests for plaintiff to receive consultations, treatments, and surgeries for his medical needs. (Id. 37-40, 49, 51.)

II.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his version of the facts accepted as true

7

and to have all internal conflicts resolved in his favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (requiring inferences drawn from underlying facts be viewed in the light most favorable to the party opposing the motion). However, a "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)) (alteration in original).

In order to state a claim under the Eighth Amendment for ineffective medical assistance, a plaintiff must show that a defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A defendant "must have been personally aware of facts indicating a substantial risk of serious harm, and . . . actually recognized the existence of such a risk" to be deliberately indifferent. Farmer v. Brennan, 511 U.S. 825, 838 (1994). A prisoner's disagreement with medical personnel over the course of his treatment also does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Moreover, an assertion of negligence or malpractice is insufficient to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106. In other words, the medical treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

A medical condition is serious in two circumstances. A serious medical condition exists

when it has been diagnosed by a physician as mandating treatment or it is so obvious that even a lay person would recognize the need for medical care. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). A serious medical need also involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. Sosebee v. Murphy, 797 F.2d 179, 181-83 (4th Cir. 1986).

A. The Medical Defendants

Although plaintiff alleged in his complaint that the wash basin Nurse Vass gave him was dirty, Nurse Vass averred that she washed and sanitized the bowl before giving it to him, facts also reflected on plaintiff's medical record. Plaintiff fails to counter this averrment, and, furthermore, plaintiff does not relate the wash basin to any serious medical need or any resultant harm from its use.

Nurse Fields states that VDOC policy prevented her from giving plaintiff a knee brace after he refused to sign the co-pay sheet. Plaintiff did not want to accept the brace by signing the sheet because it said plaintiff would pay half the cost of the brace without a maximum limit. Nurse Fields acknowledges in her affidavit that she did not know when plaintiff first received his brace that the VDOC policy capped the inmate prosthetic co-pay at $300.00. Nurse Fields lack of knowledge of the VDOC's $300 maximum co-pay policy is not grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, especially since plaintiff could have signed the co-pay sheet and appealed any charges above $300.00. Furthermore, plaintiff received the brace in five weeks, and he does not demonstrate any injury specifically attributable to not having the brace during that period. Moreover, Nurse

9

Fields' admitted mistake about the VDOC's maximum prosthetic co-pay policy is merely negligence and does not constitute deliberate indifference, and she corrected the form and provided the brace upon learning the correct policy.

Plaintiff complains that he received Motrin despite his medical record stating that he is allergic to it. Plaintiff complained to medical staff that the Motrin upset his stomach, but he does not allege that he ever had an allergic reaction. Nurse Vass told Dr. Wray about plaintiff's complaint, and Dr. Wray prescribed Zantac to ease his stomach discomfort. Plaintiff took both prescriptions without objection despite his alleged fear that "something could have happened." However, plaintiff presently complains that Dr. Wray should not have prescribed him Motrin at all because his medical record stated he was allergic. However, plaintiff's claim that "something could have happened" fails to allege any constitutional violation.

Plaintiff complains that he did not receive physical therapy from a physical therapist and instead had to exercise his knee himself pursuant to instructions from an online orthopaedic manual. Although Dr. Patel recommended physical therapy, Dr. Wray concluded, based on his observations and interactions with the plaintiff, that plaintiff could perform exercises to strengthen his knee on his own after being shown the exercises by medical staff. Plaintiff's disagreement with Dr. Wray about the proper course of treatment, therefore, does not constitute cruel and unusual punishment.

Therefore, plaintiff fails to support his cause of action against the medical defendants, and the medical defendants are entitled to judgment as a matter of law. Accordingly, I grant the medical defendants' motion for summary judgment.

B.  The VDOC defendants.

To bring an Eighth Amendment medical assistance claim against non-medical prison personnel, plaintiff must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were deliberately indifferent to the prison physician's misconduct where even a lay person would understand that the medical care provider is being deliberately indifferent. Miltier, 896 F.2d at 854. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. Id.

Plaintiff fails to establish an Eighth Amendment violation against the VDOC defendants. Plaintiff does not allege any culpable act by Washington, whose subordinate responded to plaintiff's grievance. In light of Johnson's affidavit, plaintiff fails to support his argument that Johnson had any personal knowledge of his medical treatment or related complaints. Plaintiff's belief that Stephens should be liable for not knowing VDOC's Health Services policies is also insufficient to state an Eighth Amendment claim. Townley responded to plaintiff's grievances about the medical treatment he received, and Townley relied on the medical judgments of the medical staff and advised plaintiff to speak with the medical staff about his medical concerns. Plaintiff's allegations that Brown incorrectly answered a grievance that was later overturned similarly fails to state a claim. Brown's alleged error in the grievance process does not provide plaintiff with evidence of her deliberate indifference or interference with medical treatment.

Therefore, plaintiff fails to support his cause of action against the VDOC defendants, and the VDOC defendants are entitled to judgment as a matter of law. Accordingly, I grant the VDOC defendants' motion for summary judgment.

III.

For the foregoing reasons, I grant the defendants' motions for summary judgment and dismiss the action.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to plaintiff and counsel of record for the defendants.

**ENTER:** This 30th day of October, 2009.

*/s/ Jackson L. Kiser*
Senior United States District Judge